## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **DONNA MADDI, as guardian for minor children TIMOTHY FRANKLIN and CHRISTOPHER FRANKLIN, et al.,** | ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **CASE NO.:  4:04-CV-2384-VEH** ) |
| **VMIC, INC. and GE FANUC AUTOMATION  NORTH AMERICA, INC.,** | ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM OPINION

## I.    INTRODUCTION

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Pending before the court are Defendants VMIC, Inc. ("VMIC") and GE Fanuc Automation North America, Inc.'s ("GE") Motion for Summary Judgment (Doc. #61) filed on July 7, 2006, and Plaintiffs Donna Maddi, as the guardian for Timothy and Christopher Franklin, Erie County Department of Social Services, as guardian for Stacey Franklin, and Sarah Beth Franklin's (collectively, the "Franklin children") Motion for Summary Judgment

(Doc. #67) filed on July 7, 2006.  Based on prior rulings,[1] the claims that remain in the case on summary judgment include:  (1) count one for breach of duties under the ERISA pursuant to 29 U.S.C. § 1024(b)(4) and § 1132(c)(1)(B); (2) count three for benefits, attorney's fees, and interest due under an ERISA plan; and (3) count four for breach of fiduciary duty and misrepresentation of material facts.  (*See generally* Doc. #13).  For the reasons explained below, VMIC and GE's Motion for Summary Judgment is due to be granted, and the Franklin children's Motion for Summary Judgment is due to be denied.

## II.    FACTUAL BACKGROUND[2]

During 1998, Gerald Franklin ("Mr. Franklin") was employed by Defendant VMIC.  (Doc. #13 ¶ 8).  VMIC maintained an employee welfare benefit plan (the "Plan"), which included a life and accidental death insurance policy (the "Policy"). (*Id.*).  Fortis Benefits Insurance Company ("Fortis") is the insurer under the Policy. VMIC also maintained an Incentive Stock Option program.

On March 10, 1998, Mr. Franklin and his wife, Cynthia ("Mrs. Franklin"),

---

[1]On May 24, 2005, the court dismissed from the Franklin children's amended complaint (Doc. #13), count two and the damages portion to count four.  (Doc. #24).

[2]The court uses the Franklin children's allegations in their amended complaint (Doc. #13) by way of background as the nature of its opinion on summary judgment does not necessitate a conventional statement of undisputed and/or disputed facts.

were murdered by one of their sons, Jeffery Franklin.[3]  (*Id.* ¶ 10-11).  Plaintiff, Donna Maddi, the Franklin children's aunt, took custody of the minors, Timothy and Christopher Franklin, following the murders.  (*Id.* ¶ 14).

On or about March 11, 2004, the Franklin children entered into a pro tanto settlement with Fortis under which Fortis agreed to pay a portion of the benefits due to them as beneficiaries of Mr. Franklin's Policy maintained by VMIC.[4]  (*Id.* ¶ 22). On several different occasions after the deaths of their parents, the Franklin children maintain that they made requests for copies of VMIC's Plan governed by ERISA (as well as other ERISA-based information), but that VMIC failed to provide them with the requested materials.  (*Id.* ¶ 23).

VMIC was eventually acquired by GE through a stock purchase agreement, and GE is the parent company of VMIC.  (*Id.* ¶ 6).  The Franklin children initiated this lawsuit against VMIC and GE on August 3, 2004.  (Doc. #1).

---

[3]Jeffery Franklin also attacked Plaintiffs Timothy, Christopher, and Sarah Beth Franklin.

[4]The total amount paid to the Franklin children by Fortis as a result of this settlement equals $ 676,860.00 with $ 270,744.00 or 40% of that figure being paid out as attorney's fees to counsel for the Franklin children.  (*See, e.g.*, Doc. #64 at 33; Doc. #68 at Ex. R ¶ 33).

## III.   STANDARD ON SUMMARY JUDGMENT[5]

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See id.* at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

----

[5]Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law.  *See Chambers & Co. v. Equitable Life Assur. Soc.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard.  *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit."  *See* Wright, Miller & Kane, *Federal Practice and Procedure* § 2720, at 327-28 (3d ed. 1998).

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.,* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its

initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v.*

6

*Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.   ANALYSIS

### A.   Count One for ERISA Discretionary Statutory Penalties

#### 1.   Law governing statutory penalty claims

Section 1024(b)(4) of ERISA provides:

> (4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, [sic] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4) (footnote omitted).

The related penalty provision, § 1132(c) provides:

> (c)  Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form

> > (1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be

7

> personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. § 1132(c).

Regarding the Franklin children's claims for statutory penalties under § 1132(c), the Eleventh Circuit has explained:

> As the former Fifth Circuit made clear in *Paris* when reviewing a district court's decision not to impose a civil penalty, "[t]he decision to grant relief under 29 U.S.C.A. § 1132(c) is committed to the discretion of the trial judge." 637 F.2d at 362.  In exercising its discretion, therefore, the trial court may undoubtedly consider whether a denial of information prejudiced a plaintiff, but prejudice is not a prerequisite to an award of civil penalties.

*Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 847 (11th Cir. 1990) (citations omitted), *overruled on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001).

Further, as explained in *Sandlin v. Iron Workers Dist. Council of Tenn. Valley & Vicinity Pension Plan*, 716 F. Supp. 571 (N.D. Ala. 1988), *aff'd*, 884 F.2d 585 (11th Cir.1989), "§ 1132(c) [does not] establish[] monetary loss as a prerequisite to the [civil penalty], which is in the nature of punitive damages designed more to

punish the intransigent administrator and to teach ERISA fiduciaries a needed lesson than to compensate the pensioner for actual loss." *Sandlin,* 716 F. Supp. at 574. Accordingly, while proof of prejudice is not a necessary element to the Franklin children's statutory penalty claim, it is still a relevant factor for the court to consider. *See also Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993) ("In *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 847 (11th Cir. 1990), however, we clarified *Paris*, indicating that 'prejudice is not a prerequisite to an award of civil penalties' under section 1132(c).").

Also, even if VMIC is able to show "[t]hat [it] eventually provided [the Franklin children] with plan documents . . . [this] poses no bar to [the Franklin children's] § 1132(c) claim."[6]  *Curry*, 891 F.2d at 847 n.8 (citing *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir.1987)).  As summarized by the *Kleinhans* court:

> However, if the administrator ultimately provides the participant with the information, § 1132(a)(3) does not provide the participant with the means to penalize the administrator for any actual violation of ERISA which might have delayed (or prevented) the participant from obtaining

---

[6]The court recognizes that the Franklin children maintain that the documents ultimately provided by VMIC were insufficient under ERISA.  However, at the same time, their cause of action relating to the withholding of required ERISA information is asserted under § 1132(c), as opposed to § 1132(a)(3).  (*See* Doc. #13 ¶ 28).  As a result, the court analyzes this particular count according to the *Curry* and *Kleinhans* framework.

9

the information.  Accordingly, if the information has been provided, the
participant must resort to § 1132(c).  Section 1132(c) allows the court,
in its discretion, to penalize an administrator up to $100 per day for each
day the administrator fails to comply with the requirements of ERISA.

*Id.*, 810 F.2d at 622.

The *Kleinhans* court further outlined the discretionary and mandatory
components relevant to a § 1132(c) claim:

> The operative words "fails or refuses to comply with a request for
> information" limit the availability of the § 1132(c) statutory penalty to
> a participant to those cases where the participant has in fact
> affirmatively requested information. Although § 1132(c) provides that
> imposition of the statutory penalty lies within the discretion of the court,
> that discretion can only be exercised where the facts of a case establish
> an actual violation of § 1132(c). Thus, the conduct and intent of the
> administrator in withholding information he or she was required to
> provide under ERISA would be a consideration relevant to a court's
> determination whether the case in question justifies the imposition of the
> statutory penalty.  However, conduct and intent have no bearing on the
> court's determination whether its discretionary power under § 1132(c)
> has in fact been triggered.  Initially, the participant must establish (1)
> that the administrator was required by ERISA to make available to the
> participant the information the participant requested, and (2) that the
> participant requested and the administrator failed or refused to provide
> the information requested before a court will consider imposing a
> statutory penalty.

*Id.*, 810 F.2d at 622 (citation omitted).

10

**2.    An   award   of   statutory   penalties   is   not appropriate for either mandatory, safe harbor, or discretionary reasons.**

As  set  forth  in  their  initial  brief  in  support  of  their  Motion  for  Summary

Judgment,  the  communications  that  the  Franklin  children  rely  upon  to  substantiate

their claim for statutory penalties include the following dates:  (1) August 21, 1998,

by Miles Brandon, the administrator; (2) July 10, 2003, by Joe Cloud ("Cloud");[7] (3)

October 24, 2003, by Cloud; and (4) January 9, 2004, also by Cloud.[8]  (Doc. #65 at

39-40).   Against  the  above  legal  backdrop,  the  court  concludes  that  the  Franklin

children  have  failed  to  adduce  sufficient  evidence  that  the  earlier  communications

relating  to  information  were  covered  under  the  scope  of  § 1132(c).   Alternatively, to

the  extent  any  of  the  communications,  including  the  written  one  dated  December  8,

2003,[9] properly fall within § 1132(c), the court finds that other mandatory reasons and

_____

[7]The  Franklin  children  maintain  that  two  (2)  violations  stem  from  July  10, 2003:  one for life insurance and any other Plan information and the other for stock option  information.   (Doc. #65 at 40).   As discussed in § IV.D. *infra*, the Franklin children  have  not  established  that  the  Incentive  Stock  Option  Agreement  is  governed by  ERISA.   Accordingly,  as  a  matter  of  law,  ERISA's  statutory  penalty  provision cannot apply to that portion of the July 10, 2003 request.

[8]These  dates  do  not  correspond  with  those  set  forth  in  the  Franklin  children's amended  complaint:   November  25,  2003,  December  8,  2003,  January  9,  2004,  and January 27, 2004.  (Doc. #13 ¶ 23).

[9]While the December 8, 2003 communication is listed in the Franklin children's amended  complaint,  the  date  is  not  included  as  triggering  one  for  statutory  damages

11

the safe harbor language save VMIC or GE from any liability.  As a further alternative ruling, the court declines, in its discretion, to award any statutory penalties because it finds insufficient evidence of bad faith on the part of VMIC or GE and considers the level of prejudice caused to the Franklin children to be minimal.

### a.    Mandatory Considerations

As an initial matter, the court agrees with VMIC and GE that the first specific request for documents triggering § 1132(c) did not occur until December 8, 2003. The first request expressly relied upon by the Franklin children in their opening brief is dated August 21, 1998, and is an oral one.  (Doc. #68 at Ex. A).  Section 1024(b)(4) expressly states that a request for information must be "written," and the court is not persuaded that an oral inquiry is sufficient.  *Cf. Curry*, 891 F.2d  at 844 (oral request followed by a written one occurring a few days after telephone conversation).

The second communication, offered by the Franklin children is dated July 10, 2003.  Although written, this communication merely lists several items secured at the Franklin home and asks generally for confirmation as to the existence of life insurance as a part of Mr. Franklin's benefits package.[10]  Absent from this letter;

---

in the Franklin children's initial brief.  Regardless, the December 3, 2003 letter is part of the record on summary judgment and is discussed by both sides.

[10]To the extent that the Seventh Circuit has ruled otherwise, the court is not persuaded.  *See Anderson v. Flexel*, 47 F.3d 243 (7th Cir. 1995) ("While the letter

however, is a written request that VMIC provide certain documentation (to counsel

for the Franklin children.) (Doc. #68 at Ex. E).   Therefore, § 1132(c) is not

triggered.[11]  Similarly, the third communication relied upon, dated October 24, 2003,

and authored by counsel for the Franklin children, is similarly flawed because it does

not request copies of any ERISA documents, but rather again seeks confirmation

about the existence  of "any other benefits, insurance, stock or stock options owed"

to the Franklin children.  (Doc. #68 at Ex. G).

The fourth communication specifically offered by the Franklin children, dated

January 9, 2004,  acknowledges the receipt of certain materials as a result of the

December 8, 2003 letter, which specifically requested the production of documents.

This letter points out that, despite what was provided, the Franklin children still lack

a copy of "the policy and plan[.]"  (Doc. #68 at Ex. L).  In the court's view, this letter

---

does not request the beneficiary designation forms or policy handbook by name, an
administrator cannot use such technical considerations as an excuse for its failure to
respond.")  *Id.*, 47 F.3d at 250.

[11]This court is mindful that a written request for documentation need not
include any magic language to trigger an administrator's duty to produce ERISA
materials, but, at a minimum, the court believes that some type of wording which
reasonably puts the administrator on notice (*i.e.*, such as the Franklin's children's
December 8, 2003 letter) of its duty to timely produce information within thirty (30)
days, is necessary.

is insufficient to re-trigger § 1132(c) because of its relationship as a follow-up piece to the production made to the Franklin children after the December 8, 2003 letter.

Also, VMIC and GE are correct when they point out to the court that not every document about which the Franklin children complain is covered under § 1024(b)(4).[12]  The Franklin children suggest that this court should be guided by the list of documents included in the DOL Advisory Opinion 96-14A (July 31, 1996) (*see* Doc. #82 at 12).  However, the explicit issue addressed in DOL Advisory Opinion 96-14A is "whether the schedule of 'usual and customary' fees, which is used as a basis for determining the dollar amount that will be paid for health claims made under a welfare benefit plan, must be made available for examination and/or furnished by the

--------

[12]The primary missing ERISA-required document about which the Franklin children still complain is a copy of the summary plan description or "SPD."  (Doc. #82 at 6; Doc. #75 at 25 ("*The SPD, which must contain certain information, has never been provided*.").  However, as VMIC has explained, the Fortis booklet is intended to be the SPD.  Moreover, the court concludes, consistent with *Hicks*, that the booklet substantially complies with the SPD requirements set forth in § 1022(b) and applicable DOL regulations. *See Hicks v. Fleming Co.*, 961 F.2d 537, 542 (5th Cir. 1992) ("[T]he appropriate test for determining if a document constitutes an SPD under ERISA is to see whether it contains all or substantially all categories of information required under 29 U.S.C. § 1022(b) and the DOL's regulations at 29 C.F.R. § 2520.102-3 for the type of benefit in question.").  The other documents that the Franklin children list as still missing are "the administrative services agreement, the policy directions or procedures, the Fortis Plan or the Stock Option Plan."  (*Id.*).  On summary judgment, the Franklin children have acknowledged receiving a copy of the Policy applicable to Mr. Franklin.  (Doc. #65 at 32 ("A policy was provided by letter dated April 7, 2006.")).

plan administrator upon the request of a plan participant or beneficiary." *Id.*, 1996 WL 436584 (E.R.I.S.A.).   Moreover, DOL Advisory Opinion 96-14A does not mention, much less discuss, any penalties regarding the failure of an administrator to produce materials under ERISA.   *Id.*   Therefore, the court adheres to the plain language of § 1024(b)(4), which requires an administrator to produce the summary plan description or "SPD" and other document (by whatever name) "under which the plan is established or operated."   *Cf. Montgomery v. Metropolitan Life Ins. Co.*, 403 F. Supp. 2d 1261, 1265 (N.D. Ga. 2005) ("'To the extent claims-related documents are required to be provided, the obligation arises by federal regulation,' citing to 29 C.F.R. § 2560.503-1(g).  This court agrees.  29 C.F.R. § 2560.503-1 does not provide for strict liability for violations, nor does the regulation impose a per-diem fine for violations.") (citation omitted).

Moreover, within thirty (30) days of December 8, 2003, the Franklin children's counsel was provided with the applicable Fortis booklet, a document intended to be the SPD (*see* Doc. #58 at Ex. E at 189), and the enrollment card.  By such action, VMIC and GE reasonably provided to the Franklin children all the documentation

that either could produce at that time.[13]   Accordingly, the Franklin children's §

1132(c) claim is due to be dismissed as a matter of law.

### b.    Safe Harbor Considerations

Additionally, § 1132 does provide a safe harbor which excuses a "failure or

refusal [to provide documentation that] results from matters reasonably beyond the

control of the administrator[.]" 29 U.S.C. § 1132(c)(1)(B).  At least one district court

within the Eleventh Circuit has relied upon the safe harbor proviso, in part, in finding

in favor of the administrator:

> Here, the court finds that any refusal to comply with plaintiff's request
> for information resulted "from matters reasonably beyond the control of
> the administrator."  The defendant at all times acted reasonably and in
> good faith in responding to the plaintiff's demands.  To impose penalties
> on the defendant would frustrate the punitive purpose of this statute.

*Holman v. K-Mart Corp.*, 831 F. Supp. 836, 840 (M.D. Ala. 1993).

In support of applying the safe harbor clause, VMIC and GE note:  (1) the

almost six (6) year time lapse between the death of Mr. Franklin in March 1998 and

the triggering written request in December 2003; (2) the three (3) intervening HR

---

[13]For example, no proof exists in the record that an "administrative services
agreement and/or third party administrative agreement" ever existed.  (Doc. #78 at
11).  Accordingly, neither VMIC nor GE could reasonably be expected to produce
this requested document.  Similarly, while the Franklin children discredited the form
and contents of the Fortis booklet, neither VMIC nor GE could reasonably be
expected to produce a document different than what was intended to be the SPD.

Directors, including one (1) who admits to shredding documents and/or placing materials in an unlabeled drawer in an effort to make the HR office a paperless one (*see* Doc. #59 at Ex. H at 136, 67-68, 54, 59-60);  and (3) the transition associated with GE's stock buyout of VMIC.  (*See* Doc. #78 at 5-6).  The Franklin children do not adequately address any of these safe harbor issues, and instead unconvincingly ask this court to analyze potential liability under § 1132 under an approach akin to strict liability.  Accordingly, the Franklin children's § 1132(c) claim is alternatively due to be dismissed as a matter of law because of the application of the safe harbor provision.

### c.      Discretionary Considerations

Additionally, even if the documents provided do not measure up to what the Franklin children maintain should have been completely provided under ERISA and the safe harbor provision does not apply to these facts, then the court, in its discretion, does not believe that the imposition of penalties is appropriate because, with the Fortis booklet and enrollment card, the Franklin children, through their counsel, were equipped with the following information:  (1) the name of the insurance company; (2) its address; (3) an explanation of benefits under the Policy; and (4) instructions on how to make a claim for benefits.  Further, with this information, the Franklin children were able to and did pursue a recovery from Fortis for life insurance benefits

under the Policy in March 2004.   Accordingly, this case is significantly distinguishable from those others relied upon by the Franklin children in which a participant or beneficiary had not received any compensation for benefits, either because of an outright denial or an unexplained lengthy delay in investigating or processing the claim.  In the latter group of cases, the failure to provide ERISA-required information directly hampered the claimant's ability to secure benefits rightfully due.

Moreover, the record also reflects that one (1) day after the death of Mr. Franklin, which occurred on March 10, 1998, Faye Robinson ("Robinson"), the Human Resource Director of VMIC, took steps to notify Fortis about his death, including a call to Fortis's agent, Scott Head.  (Doc. #57 at Ex. A at 42, 267-68, 271). Also, shortly thereafter, Robinson also met L. J. Elliott ("Elliott"), the brother-in-law of Mrs. Franklin, and one day later (*i.e.*, on March 12, 1998), gave him COBRA information as well as a Fortis life insurance form and a summary booklet.  (Doc. #57 at Ex. A at 61, 184, 262-63; *id.* at Ex. B at 30, 38, 62-63).

After Maddi arrived in Huntsville, Elliott took all the papers he had gathered in a paper bag while at the hospital and gave them to her, which means that Maddi received this initial information over six (6) years before the filing of this lawsuit. (Doc. #57 at Ex. B at 45, 63-66, 69, 111-12; Doc. #58 at Ex. C at 79).  Despite her

possession of these documents, Maddi never contacted Elliott, Robinson, VMIC, or Fortis about the Policy.  (Doc. #57 at Ex. A at 82; Doc. #58 at Ex. C at 50-55).

Furthermore, and despite the significant elapse in time between Mr. Franklin's death and the first triggering request for ERISA information, the record shows the many efforts made by HR Director Patricia Diaz ("Diaz") to find documentation relating to the Policy in place six (6) years earlier.  (*See, e.g.*, Doc. #59 at Ex. F at 109-113, 115-18, 120-21, 124, 128-29, 131-33, 146-48, 161-62 (detailing search-related activities conducted by Diaz)).  These numerous actions undertaken by Diaz to provide responsive ERISA information do not, in the court's discretion, demonstrate bad faith or support an imposition of a punitive award against VMIC or GE.

Therefore, the court fails to see a significant degree of misconduct or bad faith on the part of VMIC or GE to the extent that either party failed to provide certain ERISA-required information to the Franklin children such that a discretionary award of penalties is proper.  Similarly, the court considers the level of harm or prejudice caused to the Franklin children to be limited in that the information provided to them after the specific December 2003 request enabled them to pursue life insurance benefits with Fortis, which they did, and which ultimately resulted in a pro tanto

settlement with Fortis in March 2004.[14]   Moreover, the information necessary to

proceed with filing a claim with Fortis was provided to Maddi as early as March of

1998,[15] and the evidence does not show that VMIC or GE interfered with or hindered

Maddi's efforts to secure life insurance benefits for the Franklin children, but rather

that Maddi simply did not ever follow up.  (*See* Doc. #58 at Ex. C at 37 (Maddi

admittedly "didn't take care of paperwork and doing all that.")).  Under these unique

circumstances and balancing the equities, an award of statutory penalties is

inappropriate in the court's discretion.  Accordingly, the Franklin children's §

1132(c) claim is alternatively due to be dismissed as a matter of law on discretionary

grounds.

---

[14]Unlike the facts in *Curry*, the Franklin children had not been denied life insurance benefits, which resulted in their hiring an attorney.  Instead, they already had counsel relating to pending state court litigation at the time that the § 1132(c) December 2003 request was made.  *See Curry*, 891 F.2d at 847 n.10 ("CFI's conduct forced Curry to hire an attorney.").

[15]In a letter dated July 10, 2003, counsel for the Franklin children also acknowledged having possession of an "Incentive Stock Option Agreement" relating to Mr. Franklin's employment with VMIC by indicating that it was included in discovered "miscellaneous papers which were gathered from the family's home." (Doc. #59 at Ex. F-1, Ex. 2).

**B.     Count Three for ERISA Benefits, Attorney's Fees, and Interest**

**1.     Law governing benefit claims under § 1132(a)(2)**

In count three, the Franklin children seek to recover benefits, attorney's fees, and interest.[16]  VMIC argues for the dismissal of the Franklin children's claim for benefits on the ground that it is not the proper party to this type of claim but, rather, Fortis, the insurer, is.[17]  In *Garren v. John Hancock Mut. Life, Ins. Co.*, 114 F.3d 186 (11th Cir. 1997), the Eleventh Circuit explained:

> The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan.  *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S. Ct. 76, 102 L. Ed. 2d 52 (1988); *see* 29 U.S.C. § 1132(d)(1); *see also Rosen v. TRW, Inc.*, 979 F.2d 191, 193-94 (11th Cir. 1992) (a company that administers the plan can be held liable for ERISA violations).  In this case, the administrator of the Georgia-Pacific Hourly Employees Welfare Benefits Trust, an ERISA plan, is plaintiff's employer, Georgia-Pacific. In fact, the benefits plan specifically states that "Georgia-Pacific Corporation is the Plan Administrator . . . with exclusive responsibility and complete discretionary authority to control the operation and administration of this Plan . . . and to resolve all interpretive, equitable, and other questions that shall arise in the operation of this Plan."   In addition, John Hancock, the company

---

[16]As set forth in the Franklin Children's supplemental disclosures dated May 1, 2006, they seek an award of back benefits in the amount of $270,744.00, which equals the contingency attorney's fee paid to counsel as a result of the pro tanto settlement reached with Fortis.  (Doc. #60 at Ex. R § (C)2.).

[17]VMIC offers other grounds for dismissal relating to § 1132(a)(2) which the court does not reach.

servicing the Plan, submitted an affidavit averring that it does not exercise any discretion, responsibility or control over the administration of the Plan.   The evidence is clear that Georgia-Pacific as Plan Administrator is the proper party defendant, not John Hancock.

*Garren*, 114 F.3d at 187.

### 2.   Neither VMIC nor GE is a   proper party defendant to the Franklin children's § 1132(a)(2) claim.

The evidence in this record reflects that Fortis, not VMIC, has the power to exercise discretion, responsibility, or control over the administration of the Policy that is under the Plan.   For example, as Karen Nielsen ("Nielsen"), the corporate representative for Fortis, testified:  VMIC has no discretion to interpret the terms of the Policy; VMIC cannot usurp any of the responsibilities or discretion provided to Fortis under the Policy; Fortis has the sole authority in determining eligibility for participation in the Policy at issue; and Fortis is the only party responsible for paying life insurance benefits to a beneficiary.  (Doc. #58 at Ex. E at 43-44, 61, 45, 23-26, 37-38).

Nielsen's testimony is consistent with the "Authority" section of the Fortis Policy "Claim Provisions" which states that Fortis has "the sole discretionary authority to determine eligibility for participation or benefits and to interpret the

terms of the Policy." (Doc. #58 at Ex. E-1 at Ex. 1 at Fortis-0191).[18]  Similarly, "[a]ll determinations and interpretations made by [Fortis] are conclusive and binding on all parties." (*Id.*).

Moreover, the activities that VMIC has engaged in concerning the Policy are ministerial ones that are more servicing in nature including calculating premiums, maintaining beneficiary designations, disseminating information to employees, providing and submitting proof of claim forms, changing the number of participants, enrolling employees, notifying Fortis about Policy beneficiaries, and paying for the Policy. (*See* Doc. #58 at Ex. E at 137-143).  None of these actions reflects the use of discretionary authority by VMIC.

Furthermore, there is no evidence that GE engaged in any actions, discretionary or otherwise, concerning the Policy in place from March 1, 1998, to December 31, 1998, under the Plan.  More specifically, as it relates to GE,  the record shows that it purchased the stock and became the shareholder of VMIC in September 2001.  (Doc. #49 ¶ 3; Doc. #59 at Ex. I at 9).  After this stock purchase transaction, on March 3, 2003, all VMIC employees made the transition to GE benefits, and VMIC  benefits were cancelled.  (Doc. #59 at Ex. G at 28-29, 114).  Accordingly, neither VMIC nor

---

[18]The Fortis "Group Benefits" booklet contains the identical sole discretionary power language.  (Doc. #58 at Ex. E-1 at Ex. 3 at 15).

GE is a proper party to the Franklin children's ERISA benefits claim due to their lack of any discretionary authority under the subject Policy.

Therefore, the Franklin children may not proceed against VMIC or GE for the recovery of life insurance benefits.  Because the Franklin children have no cognizable ERISA benefits claim against either party, their claims for interest and attorney's fees are similarly due to be dismissed.

### C.     Count Four for ERISA Fiduciary Claims

#### 1.     ERISA fiduciary claims, including any fiduciary misrepresentations, do not exist for prosecuting individualized rights or when adequate relief is otherwise afforded under § 1132(a)(2).

The Franklin children's claim for breach of fiduciary duty is due to be dismissed as a matter of law because their avenue of relief under ERISA is § 1132(a)(1)(B).  Pursuit of fiduciary claims pursuant to either § 1132(a)(2) or § 1132(a)(3) is not automatic.

In relevant portion, § 1132(a) states:

> A civil action may be brought--
> (1) by a participant or beneficiary-- . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [Liability for breach of fiduciary duty];

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter [Protection of Employee Benefit Rights, 29 U.S.C. §§ 1001-1169] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a); *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.*, 102 F.3d 712, 714 (4th Cir. 1996).

### a.      Scope of § 1132(a)(2)

As recognized by the Fourth Circuit in *Coyne*:

[T]he analysis of who may recover benefits under ERISA must begin with section 502(a)(1)(B), the section which specifically provides a cause of action for benefits. Coyne's description of its claim as one for breach of Blue Cross' fiduciary duty does not alter the fact that it is seeking medical benefits which it claims are owed to Tyree. To permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading; indeed every wrongful denial of benefits could be characterized as a breach of fiduciary duty under Coyne's theory.

*Coyne*, 102 F.3d at 714.

The *Coyne* court further explained that, with respect to § 1132(a)(2), the United States Supreme Court has made it clear that "any recovery under section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries" and that suing for deliberate delay in the processing of a benefits claim does not fall into that category.  102 F.3d at 715 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473

U.S. 134, 144 (1985)); *see, e.g., Crocco v. Xerox Corp.*, 137 F.3d 105, 107 n.2 (2d Cir. 1998) (recognizing that "§ 502(a)(2) creates [a] right of action for plaintiffs suing for breach of fiduciary duty on behalf of the plan" and that "relief available under § 502(a)(3) [is limited] to traditional equitable remedies, which do not include compensatory damages"); *Ream v. Frey*, 107 F.3d 147, 152 (3d Cir. 1997) ("Nor could they proceed under ERISA § 502(a)(2) because that provision does not allow for individual recovery.") (citation omitted); *Adamson v. Armco*, 44 F.3d 650, 654 n.3 (8th Cir. 1995) (dismissing §§ 502(a)(2)-(3) claims as time-barred, but noting other potential applicable limitations to relief sought under these provisions); *Lee v. Burkhart*, 991 F.2d 1004, 1007 (2d Cir. 1990) ("[A]n action under Section 502(a)(2) may be brought only on behalf of a plan itself rather than for the benefit of an individual participant[.]") (citation omitted); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 n.7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either § 409 or § 502(a)(2)."); *Bryant v. International Fruit Prods. Co.*, 886 F.2d 132, 135 (6th Cir. 1989) ("As the language regarding fiduciary duty suits in section 1109 [as asserted pursuant to § 1132(a)(2)] makes clear, ERISA contemplates that breaches of fiduciary duties injure the plan, not individual beneficiaries, and any recovery thus goes to the plan."); *Drinkwater v. Metropolitan*

26

*Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir. 1988) ("[T]he [*Russell*] Court concluded that Congress had created liability for breach of fiduciary duty [under § 1132(a)(2)] only in favor of the plan, and not in favor of individual beneficiaries.") (citation omitted) (emphasis in original).  Therefore, the highly individualized nature of the Franklin children's claims makes § 1132(a)(2) unavailable to them.

### b.   Scope of § 1132(a)(3)

As for § 1132(a)(3), the *Coyne* court, relying in part upon a decision issued by the Fifth Circuit, reached a similar conclusion that the provision is "intended to address violations affecting a plan more generally" and does not extend to "wrongs suffered by individual [participants.]"  Instead, the appropriate civil enforcement provision to use for obtaining benefits due under a plan is § 1132(a)(1)(B):

> As the Fifth Circuit put it, "Section 502(a)(3) provides for relief apart from an award of benefits due under the terms of a plan. When a beneficiary [or a participant] simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B)." *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir.1992).

*Coyne*, 102 F.3d at 715; *see also Lee*, 991 F.2d at 1011 ("The plain language of [§ 502(a)(3)] does not provide for monetary relief and a review of the legislative history confirms that Congress did not contemplate that this phrase would include an award of money damages."); *Drinkwater*, 846 F.2d at 825 ("[W]e conclude, as have the

Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits, that extra-contractual damages are unavailable under § 1132(a)(3).   We give our transcontinental imprimatur to the Ninth Circuit's simple, appealing expression of that conclusion: '[I]t appears that Congress used the word 'equitable' [in § 1132(a)(3)] to mean what it usually means--injunctive or declaratory relief.'") (footnotes omitted).

Similar to the *Coyne* case, the heart of this lawsuit is about the Franklin children's individual rights to payment as beneficiaries under the Plan.  Also akin to the *Coyne* case, this lawsuit involves an effort to seek recovery for only four (4) beneficiaries (as opposed to a larger number or relief that is more plan-wide in nature), and count four seeks to recover what could otherwise be sought (and was, in effect, sought against Fortis in the form of a pro tanto settlement, and is also being sought against VMIC and GE in this lawsuit) under § 1132(a)(1)(B).   Such an expansive reading of § 1132(a)(3) would be contrary to the United States Supreme Court's interpretation of ERISA's civil enforcement provisions.  *Coyne*, 102 F.3d at 716 ("[I]n finding that section 502(a)(3) was a catchall provision, however, the Court stated that it provides 'equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.'") (quoting *Varity Corp. v. Howe*, 516 U.S. 489 (1996)).

As the Supreme Court instructed in *Varity* regarding the parameters of §
1132(a)(3):

> We should expect the courts, in fashioning "appropriate"
> equitable relief, will keep in mind the "special nature and purpose of
> employee benefit plans," and will respect the "policy choices reflected
> in the inclusion of certain remedies and the exclusion of others." Thus,
> we should expect that where Congress elsewhere provided adequate
> relief for a beneficiary's injury, there will likely be no need for further
> equitable relief, in which case such relief normally would not be
> "appropriate."

516 U.S. at 515. *See also In Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d

1084, 1089 (11th Cir. 1999) (holding that plaintiff who has an available claim under

another subsection of § 502(a) cannot proceed under §502(a)(3) and, moreover, that

"the availability of an adequate remedy under the law . . . does not mean, nor does it

guarantee, an adjudication in one's favor.").  Put differently, "a plaintiff who can state

a cognizable claim under either (a)(1)(b) or (a)(2) may not also rely on the (a)(3)

'safety net' even if he is ultimately unable to prevail under both (a)(1)(b) and (a)(2)."

*See Cotton v. Massachusetts Mutual Life Ins. Co.*,  402 F.3d 1267, 1276 (11th Cir.

2005).  Therefore, § 1332(a)(3) is similarly unavailable to the Franklin children due

to the particular nature of their claims and the availability of adequate relief

elsewhere under ERISA.

> **2.    Alternatively, the Franklin children have failed to show that VMIC and GE operate as fiduciaries for the purpose of their claims.**

The Franklin children have also failed to demonstrate that VMIC and GE are fiduciaries under the Plan, and thus properly subject to suit under either § 1132(a)(2) or § 1132(a)(3).  Regarding fiduciary status, the Eleventh Circuit has recently stated:

> ERISA provides that a person is a fiduciary with respect to the plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Significantly, under this definition, a party is a fiduciary only "to the extent" that it performs a fiduciary function. As such, fiduciary status under ERISA is not an "all-or-nothing concept," and "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Coleman v. Nationwide Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992). . . .  The question whether a party is an ERISA fiduciary is a mixed question of law and fact.

*Cotton*, 402 F.3d at 1277.  Therefore, an examination of the nexus between a party's role and the challenged action is critical to fiduciary assessment.  Also, in making a fiduciary status determination, the court is mindful that how a party specifically functions with respect to a plan predominates over how its role is characterized or labeled.  *See Cotton*, 402 F.3d at 1278 ("Indeed, because the plaintiffs do not

otherwise explain from whence this discretion came or how specifically Mass Mutual 'administered, managed, and controlled' the plan, their allegations are really no more than a conclusory assertion that Mass Mutual is an ERISA fiduciary.").

Against this legal backdrop, the record is devoid of proof that either VMIC or GE possesses discretionary authority under the Policy that is the subject of the Plan. (*See* § IV.B.2., *supra*).  Instead, Fortis, the insurer, is given the discretionary authority to award benefits.  The activities for which VMIC or GE are responsible are ministerial ones, and the Franklin children have failed to demonstrate how any of Defendants' actions constitute discretionary ones and/or deserve fiduciary status treatment.

Therefore, the Franklin children's efforts to pursue a breach of fiduciary duty or misrepresentation claim pursuant to either § 1132(a)(2) or § 1132(a)(3) is not appropriate because of the highly individualized nature of their claims and the existence of an adequate available remedy for benefits under the Plan pursuant to § 1132(a)(1)(B).  Alternatively, the Franklin children's fiduciary-based claims fail because they have not produced sufficient evidence to show that VMIC and its parent, GE, operate as fiduciaries under the Plan in the specific context of their claims. Accordingly, summary judgment in favor of VMIC and GE on count four is due to be entered on this alternative ground.

**D.    Incentive Stock Option Agreement**

With the exception of making a few general references to "stock options" in their amended complaint, the Franklin children have not pled, much less substantiated, any claim under ERISA relating to the Incentive Stock Option Agreement.  For example, the Franklin children have not presented evidence to establish that the Incentive Stock Option Agreement falls under ERISA as either part of an employee welfare benefit plan or pension plan.  As VMIC and GE point out, the mere existence of an Incentive Stock Option Agreement does not mean that it is governed by ERISA.  *See, e.g., Oatway v. American Int'l Group, Inc.*, 325 F.3d 184 (3d Cir. 2003)  ("[M]ost [district] courts have uniformly held that an incentive stock option plan is not an ERISA plan.").

In *Oatway*, the Court of Appeals for the Third Circuit, relying upon the Fifth Circuit's decision in *Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir.1980), a case involving an employer-sponsored bonus system for certain key employees in the form of assigning a specific royalty interest in a drilling prospect that it planned to develop,[19] determined that incentive stock option agreements are not subject to ERISA:

_____

[19]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

      We agree with the legal analysis of *Murphy*, as applied by the district court in this case, and the unbroken line of cases that have followed *Murphy's* reasoning. Here, Oatway's stock options were discretionary, given in recognition of special service, and awarded in addition to his regular compensation. *See Murphy*, 611 F.2d at 575-76. They did not result in the deferral of income even though they could be exercised after he retired. *Id.* In short, the AIG stock option agreements were not ERISA plans.

*Oatway*, 325 F.3d at 189; *see also Williams v. Wright*, 927 F.2d 1540 (11th Cir.1991) (relying on *Murphy*, where a letter agreement between an employee and an employer providing $500 per month on the first of each month was not considered to be an ERISA plan); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325 (11th Cir.1998) (where a long term incentive plan for senior executives was not considered to be an ERISA plan); *Mauldin v. Worldcom, Inc.*, 263 F.3d 1205 (10th Cir.2001) (where the court noted its surprise that neither party argued that the stock option agreements were subject to ERISA); *Kerkhof v. MCI Worldcom, Inc.*, 282 F.3d 44 (1st Cir.2002) (where neither party argued that the MFS plan or the stock option agreement were governed by ERISA).[20]

      Therefore, the Franklin children have failed to present substantial evidence in support of any ERISA-based claim regarding the Incentive Stock Option Agreement. Accordingly, to the extent that such a claim exists in the Franklin children's amended

---

[20]The cases (and the corresponding parenthetical explanations) in this string citation were all cited by the *Oatway* court. *See id.* at 188.

complaint, or even can exist in an ERISA case, the court concludes that a dismissal of any theories of relief relating to incentive stock options is appropriate as a matter of law based upon the reasoning of *Oatway* and *Murphy* above.

## V.    CONCLUSION

Defendants VMIC and GE have carried their burden on summary judgment of demonstrating the absence of material factual disputes and entitlement to judgment as a matter of law, and the Franklin children have not.  Accordingly, Defendant VMIC and GE's Motion for Summary Judgment is due to granted, and the Franklin children's Motion for Summary Judgment is due to be denied.  The court will enter a separate order.

**DONE** and **ORDERED** this the 15th day of February, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

34